UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LONNIE J. KAHOE, SR. | CIVIL ACTION |
| VERSUS | NO. 22-3354 |
| JUAN FIOL, ET AL. | SECTION "I" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Lonnie J. Kahoe, Sr., filed a complaint (ECF No. 4; ECF No. 4-1) pursuant to 42 U.S.C. § 1983 which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.  FACTUAL ALLEGATIONS

Kahoe filed a *pro se* and *in forma pauperis* complaint pursuant 42 U.S.C. § 1983 against the following defendants: assistant Orleans Parish public defenders Juan Fiol, Sierra Thompson, and Derwyn Bunton; the public defenders' investigator Sara Jones; mental health care providers Lionel King, James Brad McConville, Sarah Deland, Jose Artecona, and C. Robinson-Jackson; minute clerk for Section I of the Orleans Parish Criminal District Court, Claire Lavaccari, and law clerk for Section I at the Orleans Parish Criminal District Court, Michael Riehlmann. ECF No. 4, ¶III(B-L), at 4, 6; ECF No. 4-1, at 1.[1]

---

[1] Kahoe has since filed two memoranda in which he details events that occurred after the filing of this complaint. ECF Nos. 7, 8. I have reviewed the documents and do not find that either memorandum alters the findings and recommendations made in this report.

Kahoe alleges that his public defender, Fiol, lied in open court about not having discovery, lied about moving for a speedy trial, and lied about investigator Jones needing access to 10 years of his emails to gather information for trial. ECF No. 4, ¶IV(B-D), at 7; ECF No. 4-1, at 1. Kahoe asserts that in September 2019, Fiol became his public defender and coerced him into signing a release to allow Jones to access 10 years of his personal emails. ECF No. 4, ¶IV(M) at 10; ECF No. 4-1, ¶2, at 2. He claims that Jones never contacted any of his witnesses and did not return his emails or other evidence that was supposed support his defense.

Kahoe also claims that, on November 21, 2019, after waiting 200 days for charges to be approved or dropped, Fiol told Kahoe that there was no speedy trial issue and that he must agree to accept new charges or he would not get a bond to be released. ECF No. 4, ¶IV(L), at 9-10; ECF No. 4-1, ¶2, at 5. Kahoe claims that there was no judge in the courtroom at the time of this discussion.

During his brief release on bond in 2020, Kahoe discovered that no one from the public defender's office contacted people about his defense. ECF No. 4-1, ¶2, at 2. In July 2020, Kahoe asked Fiol why Jones never returned his private information, and Fiol told him that he was "pissing off certain people with [his] investigating and he better find a tall mountain to go hide." ECF No. 4, ¶IV(I), at 8-9; ECF No. 4-1, ¶2, at 3.

Kahoe further alleges that at some point in 2020, he contacted Sierra Thompson, whom he believed to be a supervising public defender, to have Fiol removed from his case. ECF No. 4, ¶IV(M) at 11; ECF No. 4-1, ¶2, at 3. Thompson passed his phone number on to other alleged supervisors, claiming she was not appointed to Fiol or Kahoe's case. He claims that the numbers she provided were inactive.

Kahoe alleges that, at some point, Fiol sent him a text message to appear in court on December 1, 2020. ECF No. 4, ¶IV(E), at 7; ECF No. 4-1, ¶2, at 3. Kahoe claims he did not have court that day and this was a ruse which led to the state court increasing his bond to $50,000. ECF No. 4, ¶IV(E), at 7; ECF No. 4-1, ¶2, at 4. He claims the court issued the bond increase after the minute clerk, Lavaccari, handed a document to Judge K.K. Herman. He contends that this increase must have been arranged by Fiol and someone named Jill at Steve's Bail Bonds.

Kahoe further claims that defendant Lavaccari, as Judge Herman's minute clerk at the Orleans Parish Criminal District Court, also posted an entry on October 22, 2020, which falsely set a pretrial conference for December 1, 2020. ECF No. 4, ¶IV(M) at 18; ECF No. 4-1, at 1. He denies that he was scheduled for court that day. He claims this was a fake court date made up by Fiol so that Kahoe would get to court for Lavaccari to give Judge Herman a document to increase his bond to $50,000. He asserts that this was a clerical error and Lavaccari used the posted date to cover up for Fiol's bond extortion.

Kahoe alleges that he was rearrested on January 15, 2021. ECF No. 4, ¶IV(F), at 8; ECF No. 4-1, ¶2, at 4-5. Fiol told him he would be released that evening after paperwork was filed, but he has remained incarcerated. ECF No. 4, ¶IV(F), at 8; ECF No. 4-1, ¶2, at 5. Kahoe alleges that Fiol also told him that day that he lost Kahoe's file with all of the names, numbers, and evidence. ECF No. 4, ¶IV(G), at 8; ECF No. 4-1, at 1. Fiol told him he would be back to see him and never returned. Each time Fiol appeared in court, he would ask for more time from the court which resulted in prolonging Kahoe's incarceration. ECF No. 4, ¶IV(K), at 9; ECF No. 4-1, at 1.

Kahoe asserts that, in March of 2021, Fiol tried to solicit a family friend to give attorney Mike Ingranda a personal phone number for Kahoe's ex-wife and step-mother. ECF No. 4, ¶IV(J), at 9; ECF No. 4-1, at 1. Attorney Ingranda then visited Kahoe in jail, pretending to be a

3

replacement public defender, and, after learning about Kahoe's defense, asked for $15,000 to defend the case.

Kahoe claims that he fired Fiol on April 5, 2021.  ECF No. 4, ¶IV(H), at 8; ECF No. 4-1, ¶2, at 6.  Fiol immediately moved for Kahoe to undergo a mental evaluation and gave fraudulent information to mental health care providers and Judge Herman.  Despite being fired, Fiol remained on the case giving false reports to mental health care providers King, McConville, and Artecona through December of 2021.  He provided false and slanderous information.  ECF No. 4, ¶IV(M), at 10; ECF No. 4-1, at 1.

He further alleges that he sent complaints of malfeasance and malpractice about Fiol to Mike Mitchell and Reny Starns at the Public Defender Board in Baton Rouge.  ECF No. 4, ¶IV(M), at 10; ECF No. 4-1, ¶3, at 10.  He was told to contact Orleans Parish Chief Deputy Public Defender Derwyn Bunton, who refused to speak with him or reply to his letters for three years.  Kahoe claims this was disregard for Fiol's incompetence and intentional misrepresentation and amounted to a refusal of counsel or defense.  ECF No. 4, ¶IV(M) at 10; ECF No. 4-1, at 1.  Kahoe asserts that Bunton spoke with him only once in October 2021, and told Kahoe that he would be getting a new attorney, Arthur Rowe, and then hung up.  ECF No. 4, ¶IV(M) at 12; ECF No. 4-1, at 1.

On April 30, 2021, Kahoe was taken for a court video appearance during which Dr. Richard Richoux told Kahoe he would be doing a mental health evaluation.  ECF No. 4-1, ¶3, at 6-7.  Kahoe refused to participate because he had no witnesses.  *Id*. at 7.  On May 5, 2021, without hearing from Fiol beforehand, Fiol and Dr. Salcedo testified that they had conducted an evaluation and found Kahoe incompetent to proceed and to be sent ELMHS for drug treatment.  Kahoe claims he was denied the opportunity to prove his competence.  *Id*. at 8.

In July of 2021, Thompson told Kahoe that Thompson had a talk with Fiol and they "figured it out." She then told Kahoe to stop calling her. ECF No. 4, ¶IV(M) at 12; ECF No. 4-1, at 1. That same month, Kahoe was told by defendant King that Thompson asked him to do a mental health assessment for Kahoe. ECF No. 4, ¶IV(M) at 12; ECF No. 4-1, ¶2, at 6. While Kahoe was in an East Louisiana Mental Health System facility ("ELMHS") in December 2021, Kahoe acquired a file and found false statements and reports from King and Dr. Deland. ECF No. 4, ¶IV(M) at 13; ECF No. 4-1, at 1. The documents stated that they conducted an assessment on May 24, 2021 at the Orleans Justice Center ("OJC") finding Kahoe incompetent, suspicious, hostile, suicidal, and delusional, and admitted Kahoe for 15 days. The reports also indicated he was prescribed medication by Dr. Catherine Cashman on November 10, 2021. Kahoe claims that he was never given an assessment by King and has never met Dr. Deland or Dr. Cashman. He claims the reports are lies, malpractice, and corrupt.

Kahoe asserts that in July of 2021, he met with Dr. McConville by video monitor for an assessment requested by Thompson and Fiol. ECF No. 4, ¶IV(M) at 14; ECF No. 4-1, at 1. Kahoe claims that Dr. McConville told him there was nothing wrong with him and no need for him to be in ELMHS. Kahoe was later sent to ELMHS from October through December 2021. ECF No. 4, ¶IV(M) at 14; ECF No. 4-1, at 1. Dr. McConville later told Kahoe that Fiol provided collateral information that Kahoe was delusional and paranoid and out of touch with reality. The doctor then tried to convince Kahoe to take medication to stop the delusions. When Kahoe received the doctor's report, it was dated in November of 2021 not July of 2021. ECF No. 4, ¶IV(M) at 15; ECF No. 4-1, at 1.

Kahoe claims that defendant Artecona was a staff doctor at ELMHS between October 21, 2021, and February 3, 2022. Artecona told Kahoe that he was incompetent according to

information received from Fiol, King, Deland, and McConville and would be given medication. Kahoe claims that Artecona would not allow him his right to testing or evaluation. ECF No. 4, ¶IV(M) at 16; ECF No. 4-1, at ¶3, 8. He was prescribed 100 mg of risperidone[2] daily with bisacodyl[3] given to him by Nurse Barbara Wilson by placing it in his food. On January 14, 2022, Dr. Arredondo tested Kahoe and on January 17, 2022, found him competent to proceed. *Id*. at 9.

Kahoe alleges that, while in ELMHS on January 26, 2022, he was given a packet of documents and told defendant Riehlmann was requesting records needed for an upcoming competency hearing. ECF No. 4, ¶IV(M) at 19; ECF No. 4-1, at 1. The ELMHS told Kahoe he needed to sign the release for Riehlmann so he could be transported back to OJC. Kahoe claims that Riehlmann did not admit the records of his competency into the court record or present them at the hearing on March 10, 2022.

Kahoe claims that, from that date through August 26, 2022, he was held in solitary confinement at OJC. ECF No. 4, ¶IV(M) at 20; ECF No. 4-1, at 1. He missed all of his court status hearings and the clerks for the trial and appellate court wrote that he failed to appear because he was in treatment at ELMHS. Kahoe claims this was not true because he was in OJC and the Warden, Dr. Astrid Birgden, tried to inform the courts.

Dr. Artecona filed a report on February 3, 2022, stating that Kahoe suffered from "paranoid personality disorder." After months, he was finally given an administrative review by Dr. Kelley and Dr. Bordelon, and found competent to proceed. On his return to OJC, He was placed in mental health solitary confinement. ECF No. 4, ¶IV(M) at 17; ECF No. 4-1, at 1. On March 4, 2022, Dr. Salcedo and Dr. Richoux declared Kahoe incompetent and had him sent back to ELMHS. ECF

---

[2] Risperidone is used to treat the symptoms of schizophrenia, which causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions. https://medlineplus.gov/druginfo/meds/a694015.html.
[3] Bisacodyl is used on a short-term basis to treat constipation. https://medlineplus.gov/druginfo/meds/a601027.html.

No. 4-1, ¶3, at 9.  On March 7, 2022, C. Robinson-Jackson, a social worker with Wellpath Medical, gave Kahoe documents showing he was interviewed by Amanda Roberts and agreed to a non-acute treatment plan for chronic personality disorder.  The report said Kahoe discussed the treatment plan with Robinson-Jackson and signed the form.  Kahoe claims that he had not met Robinson-Jackson before.  He has been told that she was terminated from the staff.

As relief, Kahoe requests a federal investigation, reprimands, and the prevention of corruption by those involved, removal of medical licenses and disbarment, and to have Fiol prosecuted.  ECF No. 4, ¶V, at 21; ECF No. 4-1, ¶3, at 11.   He also seek compensation for wrongful imprisonment, misrepresentations, lost wages, costs for legal fees, and attorney's costs.

## II.     LEGAL STANDARDS

### A.     Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[4]  A claim is frivolous if it "lacks an arguable basis in law or fact."[5]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[6]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[7]  A court may not dismiss a claim simply because the facts are "unlikely."[8]

---

[4] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579-80.
[5] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[6] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[7] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).
[8] *Id.*

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[9]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[10]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[11]

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[12]  Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[13]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[14]  If an *in forma pauperis* complaint lacks

---

[9] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[10] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).
[11] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and quoting *Twombly*, 550 U.S. at 544).
[12] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).
[13] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[14] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).

even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and § 1915(e).[15] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[16]

### B. Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[17]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[18]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[19]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[20] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[21] "The traditional definition of acting under color of state law

---

[15] *Id.*
[16] *Id.*
[17] 42 U.S.C. § 1983.
[18] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[19] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[20] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[21] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

9

requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[22]

### III. ANALYSIS

#### A. *Heck* Doctrine

Kahoe challenges the assistance of counsel he is receiving in his state criminal proceedings and the underlying mental health diagnoses and incompetence findings, all of which are allegedly prolonging his incarceration. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or a plaintiff's present confinement. This limitation avoids collateral attacks on convictions that are still outstanding.[23] Although the Supreme Court's decision in *Heck* concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied *Heck* in cases in which the plaintiff also seeks injunctive relief.[24]

The Supreme Court applied a modified version of *Heck* to pretrial detainees in *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). In *Wallace*, the Court explained that, if a pretrial detainee files civil rights claims related to the validity of a pending criminal proceeding, the best practice is for the district court to stay the civil rights action until the pending criminal case is resolved to determine the impact of the *Heck* limitations.[25] The court in Wallace explained:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of

---

[22] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).
[23] *Heck*, 512 U.S. at 484-85.
[24] *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).
[25] *Wallace*, 549 U.S. at 393-94; *see Mackey v. Dickson*, 47 F. 3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to be the best practice).

a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.[26]

In addition to the performance of his counsel, Kahoe challenges the veracity of the underlying competency findings, which he claims were manipulated by Fiol, Thompson, and other health care providers, that have caused his continued incarceration and involuntary mental health treatment in connection with his Orleans Parish criminal proceedings. A finding on his claims of impropriety regarding his counsel and the competency findings would necessarily impact the legality of this current confinement. Kahoe does not allege that any state or federal court has determined the terms of his confinement to be invalid or criticized in any of the ways discussed in *Heck*. He instead seeks to have this court consider the validity of the competency findings in this collateral civil action, something prohibited by *Heck* and its progeny at this time.[27]

### B. Public Defenders

The *Heck* bar and *Wallace* holding would normally compel a stay of certain pretrial, premature civil claims like those intertwined with Kahoe's custody challenge. Even when faced with a *Heck* bar or stay conditions under *Wallace*, however, the Fifth Circuit requires a court to initially address dismissal of immune defendants and improper claims.[28]

In this case, Kahoe has named his public defender Fiol and supervisory public defenders Thompson and Bunton alleging denial of effective assistance of counsel, racketeering, and fraud, all relating to their roles and actions in connection with the competency proceedings in his state

---

[26] *Wallace*, 549 U.S. at 393-94 (citations omitted).
[27] *See Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 766 (11th Cir. 2020) (whether a prisoner was competent during his trial proceedings "would necessarily implicate the validity of his convictions because . . . his convictions would necessarily rest on constitutionally faulty proceedings").
[28] *See Busick v. City of Madison, Miss.*, 90 F. App'x 713, 714 (5th Cir. 2004) (recognizing that the district court should consider grounds for dismissal other than *Heck*); *see also Boyd v. Biggers*, 31 F. 3d 279, 284 (5th Cir. 1994) (immunity must be considered as a threshold matter prior to applying *Heck*).

criminal case. He also sued the public defender's investigator claiming she coerced him to sign a release form and failed to properly investigate his case or return evidence taken from him.

To state a claim under § 1983, a plaintiff must allege that a defendant was acting under color of state law when his constitutional rights were violated.[29] A defendant's actions must be "fairly attributable to the state" for there to be liability under § 1983.[30] However, attorneys, whether privately obtained or publicly appointed, are not state actors as a matter of law for purposes of a § 1983 claim.[31] The same is true for investigators that work for public defenders. An investigator for the public defender is a member of that office's staff, and is not a state actor within the meaning of § 1983.[32]

Defendants Fiol, Thompson, Bunton, and Jones are not state actors that can be held liable under § 1983. Thus, Kahoe has named defendants not subject to suit under § 1983. For the reasons that follow, his § 1983 claims against these defendants must be dismissed pursuant to 28 U.S.C. §1915(e) and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

C.  **Immune Defendants**

Kahoe has sued several health care providers, King, Dr. McConville, Dr. Deland, and Dr. Artecona, who conducted mental health evaluations and provided reports and competency recommendations during the course of Kahoe's competency proceedings and related mental health care treatment in state court.

---

[29] *Daniels v. Williams*, 474 U.S. 327 (1986); *James v. Tex. Collin Cnty.*, 535 F. 3d 365, 373 (5th Cir. 2008); *Calhoun v. Hargrove*, 312 F. 3d 730, 734 (5th Cir. 2002).
[30] *West*, 487 U.S. at 49; *Johnson ex rel. Wilson v. Dowd*, 305 F. App'x 221, 223 (5th Cir. 2008); *Cornish v. Corr. Servs. Corp.*, 402 F. 3d 545, 549 (5th Cir. 2005).
[31] *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Small v. Dall. Cnty., Tex.*, 170 F. App'x 943, 944 (5th Cir. 2006) (citing *Hudson v. Hughes*, 98 F. 3d 868, 873 (5th Cir. 1996); *Mills v. Crim. Dist. Ct. No. 3*, 837 F. 2d 677, 679 (5th Cir. 1988)).
[32] *Hall v. Dauterive*, No. 10-1306, 2010 WL 5559759, at *4 (W.D. La. Nov. 4, 2010), *R&R adopted by* 2011 WL 71390, at *1 (W.D. La. Jan. 10, 2011).

Under federal law, absolute immunity is granted to "judges, prosecutors and other persons acting 'under color of law' who perform official functions in the judicial process."[33] The absolute quasi-judicial immunity doctrine insulates from liability persons who perform functions that require them to act in accordance with a judge's direct orders.[34] The doctrine has been extended to protect court-appointed psychiatrists and psychologists because conducting court-ordered competency examinations are "essential to the judicial process."[35] The doctrine is premised on the notion that "necessary participants in the judicial process" should be immunized from liability to "guarantee an independent, disinterested decision-making process."[36]

Following this guidance, a number of courts within the Fifth Circuit have found that a psychiatrist or psychologist performing a competency evaluation in state criminal proceedings is engaged in a quasi-judicial function and enjoys derived or quasi-judicial immunity.[37] In *Francis*, the court addressed a plaintiff's similar civil rights claims arising out of a court-ordered competency examination. In addition to the foregoing federal law on quasi-judicial immunity, the court in *Francis* observed that Louisiana law also grants absolute quasi-judicial immunity to nonjudicial persons, including court-appointed psychologists and psychiatrists, because of their quasi-judicial roles in the judicial process.[38] The court in *Francis* concluded that, under both federal and state law, the evaluating doctor "would have absolute immunity for any claims arising

---

[33] *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983).
[34] *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996); *Burgess v. Cox*, No. 14-466, 2015 WL 5578305, at *5 (E.D. Tex. July 30, 2015), *R&R adopted by* 2015 WL 5579866 (E.D. Tex. Sep. 21, 2015).
[35] *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987); *Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir. 1987); *Miner v. Baker*, 638 F. Supp. 239 (E.D. Mo. 1986); *Dolin v. West*, 22 F. Supp.2d 1343 (M.D. Fla. 1998); *Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970).
[36] *Johnson v. Kegans*, 870 F.2d 992, 996 (5th Cir. 1989).
[37] *Francis v. Parish*, No. 14-338, 2014 WL 7140206, at *4-5 (E.D. La. Dec. 12, 2014); *Coltart v. Texas*, No. 19-CA-464, 2020 WL 5416515, at *6 (W.D. Tex. Aug. 6, 2020) (gathering cases); *Green v. Stevenson*, No. 12-432, 2013 WL 592891, at *3 (E.D. La. Jan. 28, 2013) (gathering cases), *R&R adopted by* 2013 WL 588962, at 1 (E.D. La. Feb. 14, 2013).
[38] *Francis*, 2014 WL 7140206, at *5 (citing *S.T.J. v. P.M.*, 556 So. 2d 244, 246-247 (La. App. 2d Cir. 1990)) (other citations omitted).

out of his court-ordered examination of Plaintiff, thereby mandating the dismissal of Plaintiff's claims against him."[39]

In this case, defendants King, McConville, Deland, and Artecona enjoy this same derived or quasi-judicial immunity from suit by Kahoe. Kahoe's claims clearly arise from the medical conclusions and recommendations reached by the doctors as part of their appointed duties with regard to Kahoe's competency evaluation, treatment, and need for medication in connection with the ongoing judicial proceeding in Orleans Parish Criminal District Court. Thus, these health care providers are immune from suit under § 1983.

Because the defendants are immune from suit, Kahoe's claims must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against immune defendants.

### D. Prison Social Worker

Apart from his competency proceedings, Kahoe alleges that a social worker at OJC, defendant Robinson-Jackson, brought him paperwork which indicated that he had agreed or needed to agree to a course of treatment at the prison for a chronic mental health disorder. Kahoe asserts that he did not agree to the treatment Robinson-Jackson was trying to impose upon him.

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain."[40] To state a constitutional violation, a prisoner must show both "objective exposure to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk."[41]

---

[39] *Id*.
[40] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal quotation marks and citation omitted).
[41] *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006).

In this situation, Kahoe does not allege that Robinson-Jackson was indifferent to his serious medical needs or denied him care of any kind. To the contrary, his claims allege that she was attempting to provide him with a recommended treatment plan for a diagnosed mental health issue. Kahoe, however, did not want the treatment. His disagreement with the medical treatment plan offered to him and/or the health care providers' decision that he needed the care does not present a constitutional violation.[42]

Kahoe's claims against this defendant should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### D.     Law Clerk and Minute Clerk

Kahoe has named two staff members from the Orleans Parish Criminal District Court as defendants. He alleges that the minute clerk for Judge Herman (Claire Lavaccari) posted a docket entry on October 22, 2020, which indicated that Judge Herman set a pretrial conference for December 1, 2020, when there was not supposed to be court that day. In addition, at the December 1, 2020, hearing Lavaccari handed a document to Judge Herman which led to an increase in his bond. He also names Judge Herman's law clerk (Michael Riehlmann) as a defendant because he, on behalf of the court, requested copies of Kahoe's medical records from ELMHS in advance of a competency hearing.

As discussed above, absolute immunity extends to non-judicial officers who perform judicial functions in accordance with a court directive or instruction, including court clerks and law clerks.[43] This rule exists because "court personnel should not serve as a lightening [sic] rod

---

[42] *Id*. at 346.
[43] *See Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (holding that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion"); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) (Judge's law clerk is absolutely immune from damage claims arising from actions taken by the law clerk in assisting the judge in carrying out his judicial functions); *Acres Bonusing,*

for harassing litigation."[44]  Court clerks and law clerks have absolute immunity from actions for damages arising for actions they are specifically required to perform by court order or discretionary action, and qualified immunity for routine duties not explicitly commanded by court decree or judicial instruction.[45]

Here, Kahoe alleges that in October of 2020, Lavaccari docketed a pretrial conference date for December 1, 2020, as a ruse of sorts to get him into court so she could hand documents to Judge Herman to increase his bond.  While declaring the date to have been contrived by Lavaccari and Fiol, he concedes in his complaint that Judge Herman was in fact in court that day and interacted with him about his case.  He presents only a conclusory allegation that the hearing date was anything other than a pretrial conference date ordered by Judge Herman.  In addition, he concedes that the bond increase was ordered by Judge Herman, not Lavaccari.  His conclusory claims are insufficient to assert a constitutional violation by Lavaccari.  Even if they were, she is immune from suit challenging her actions while engaging in her duties as directed by Judge Herman in the course of the judicial process.

As for law clerk Riehlmann, Kahoe acknowledges that Riehlmann acted in his capacity as law clerk when he sought to obtain documents needed by the court for an upcoming competency hearing.  This function was closely associated with the judicial process at the direction of the court, entitling him to quasi-judicial immunity.[46]

---

*Inc. v. Marston*, 17 F. 4th 901 (9th Cir. 2021) (law clerks enjoy immunity since they are one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function.); *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) ("[F]or purposes of absolute judicial immunity, judges and their law clerks are as one.").
[44] *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002).
[45] *Id*.
[46] *See Blakeley v. City of Laurel*, No. , 2015 WL 13091648, at *5 (S. D. Miss. Sep. 17, 2015) (deputy clerk immune from suit when performing official functions integral to the judicial process).

For these reasons, Kahoe's claims against Lavaccari and Riehlmann must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against immune defendants.

### E. RICO Claims

Kahoe invokes the phrases racketeering and RICO in his complaint. As asserted, these claims are frivolous and subject to immediate dismissal under § 1915(e). The federal criminal code contains a following civil remedy as a distinct component of the RICO statute:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . .[47]

To prove a violation of 18 U.S.C. § 1962(c), referenced therein, a plaintiff must show the following:

(1) an enterprise existed that affected interstate commerce;
(2) defendant was associated with the enterprise;
(3) the defendant participated in the conduct of the enterprise's affairs; and
(4) the participation was through a pattern of racketeering activity.[48]

The term "enterprise" is defined broadly to include any "group of individuals associated in fact."[49] A "pattern of racketeering activity" is "at least two acts" indictable under an enumeration of state and federal criminal laws contained in 18 U.S.C. § 1961(1).[50]

Kahoe's broad use of the phrase RICO fails to demonstrate any of these factors, especially the third prong related to a "pattern of racketeering activity" of the type required in the RICO statute. The RICO statute specifically lists those criminal offenses that constitute "racketeering activity," 18 U.S.C. § 1961(a), which in turn comprise the "predicate acts," which must have been

---

[47] 18 U.S.C. § 1964(c).
[48] *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir. Unit B 1981), *overruled in other respects based on a rule amendment*, *United States v. Huntress*, 956 F.2d 1309 (5th Cir. 1992)).
[49] 18 U.S.C. § 1961(4).
[50] *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir. 1985) (citing 18 U.S.C. § 1961(5)).

part of a "pattern" to assert a civil RICO claim.[51]  In other words, while Kahoe's complaint includes conclusory references to fraud, he makes no allegations sufficient to state violations of any of the particularized federal fraud, theft, or property crimes,[52] constituting "racketeering activity" as defined in the RICO statute.

Kahoe's complaint fails to state a civil RICO claim upon which relief could be granted because it fails to allege the essential elements of a RICO claim.  Under 28 U.S.C. § 1915 and §1915A, Kahoe's RICO and racketeering claims are frivolous and fail to state a claim for which relief can be granted, and as such, must be dismissed with prejudice but subject to the right to file an amended complaint within 14 days of this Report and Recommendation setting forth sufficient facts to establish each of the required elements.[53]

F.      State Law Claims

Kahoe also lists legal and medical malpractice, slander, defamation, and fraud, as claims arising from the performance of his appointed counsel and the medical examinations and recommendations by the health professionals addressed above.  However, the law is clear that malpractice and other negligent and tortious conduct do not amount to constitutional violations cognizable under § 1983.[54]  For that reason, any such claim asserted under § 1983 would be dismissed under 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

---

[51] 18 U.S.C. §§ 1962(a) and (c).
[52] *See, e.g.*, 18 U.S.C. §§ 659, 1341, 1344, 1351, 1957.
[53] A pro se prisoner is generally entitled to either a Spears hearing or an opportunity to amend to "plead his best case" if there is a reasonable belief that they have knowledge of facts to support the asserted claim or if failure to allow amendment would result in a grave injustice.  *See, e.g., Eason v. Thaler*, 14 F.3d 8 (5th. Cir. 1994) (holding that plaintiff should be given an opportunity to amend factually deficient claims); *Ruiz v. Leblanc*, 643 F. App'x. 358, 363 (5th. Cir. 2016), (holding that plaintiff should be allowed an opportunity "plead his best case).
[54] *Gibson v. Collier*, 920 F.3d 212, 219-20 (5th Cir. 2019) (claims based on negligence and other tortious acts are not sufficient to state a § 1983 claim); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *Bass v. Sullivan*, 550 F.2d 229, 232 (5th Cir. 1977) ("[A] 'malpractice [claim] will not lie under [Section] 1983' because it is a claim arising under state common law – not a constitutional violation.").

To the extent the claims are asserted under state law, they should be dismissed and left to the state courts to resolve. After dismissal of the claims over which this court has original jurisdiction, the court has the discretion either to decline or exercise supplemental jurisdiction over the state law claims.[55] Considering the provisions of 28 U.S.C. § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness and comity,[56] the court should decline to exercise jurisdiction over any potential state law claims of legal and medical malpractice, slander, defamation, and fraud, and dismiss these claims without prejudice.[57]

## IV.  RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Lonnie J. Kahoe's 42 U.S.C. § 1983 claims against defendants Juan Fiol, Sierra Thompson, Derwyn Bunton, Sara Jones, Lionel King, Dr. James Brad McConville, Dr. Sarah Deland, Dr. Jose Artecona, and C. Robinson-Jackson, Claire Lavaccari, and Michael Riehlmann be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant.

It is further **RECOMMENDED** that, because Plaintiff's RICO claims against defendants Juan Fiol, Sierra Thompson, Derwyn Bunton, Sara Jones, Lionel King, Dr. James Brad McConville, Dr. Sarah Deland, Dr. Jose Artecona, and C. Robinson-Jackson, Claire Lavaccari, and Michael Riehlmann, are frivolous and fails to state a claim for which relief can be granted, pursuant to 28 U.S.C. § 1915(e) and § 1915A, those claims be **DISMISSED WITH PREJUDICE** but subject to the right to file an amended complaint within 14 days of this Report and

---

[55] 28 U.S.C. § 1367(c)(3).
[56] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 872-73 (5th Cir. 2016); *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).
[57] *See Carter v. Pointe Coopee Par. Sheriff's Dep't*, No. 18-760, 2020 WL 1033655, at *5 (M.D. La. Mar. 3, 2020) (declining supplemental jurisdiction over state law malicious prosecution claims when dismissing all federal claims).

Recommendation setting forth sufficient facts to establish each of the required elements of a RICO claim.

It is further **RECOMMENDED** that the court **DECLINE** to exercise supplemental jurisdiction over Kahoe's state law claims of legal and medical malpractice, slander, defamation, and fraud and these claims against defendants Juan Fiol, Sierra Thompson, Derwyn Bunton, Sara Jones, Lionel King, Dr. James Brad McConville, Dr. Sarah Deland, Dr. Jose Artecona, and C. Robinson-Jackson, Claire Lavaccari, and Michael Riehlmann be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[58]

New Orleans, Louisiana, this  8th  day of February, 2023.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[58] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.